In the matter of the estate of ELIZABETH MAINS, deceased.

[Decided January 6th, 1917.]

Under the terms of the will in this case, the proceeds of the real estate for sale of part of which the testatrix made a valid contract in her lifetime, belong to her half-brother and two nephews, equally.

On appeal from a decree of the Passaic county orphans court.

*Mr. Francis Scott,* for the appellant.

*Mr. William V. Rosenkrans* and *Mr. Robert Peacock,* for the respondents.

LEWIS, VICE-ORDINARY.

This is an appeal from a decree of distribution made by the Passaic county orphans court on January 31st, 1916.

Elizabeth Mains, the testatrix, died on September 29th, 1912, leaving a will dated May 17th, 1912. By her will the testatrix bequeathed general cash legacies amounting in all to the sum of $2,400, and providing that two of the legacies should become part of her residuary estate in the event of the death of the legatees prior to that of the testatrix.

By item 1 she devised the premises Nos. 10 and 12 Madison street, in the city of Paterson, to James Whiteley, but it appears that she had a mere life estate in the same. That clause is, therefore, inoperative.

The significant clauses of the will read as follows:

"ITEM 6. I direct my. executors, hereinafter named, to sell and dispose of all my real and personal property, wheresoever situate and of whatsoever it may consist (excepting therefrom the property on Madison Street in the City of Paterson, devised in Item 1 hereof, and the burial plot in Laurel Grove Cemetery), in such manner and at such time and times as in their judgment may be for the best interests of my estate, and convert the same into cash, the same to be divided and distributed as follows:

"A.—From the proceeds of my personal estate, I direct that all my just debts, my funeral and testamentary expenses and the specific cash legacies, as set forth in ITEMS 2, 3, 4 and 5 hereof, be first paid and the remainder, if any, to be divided equally, share and share alike, between the afore mentioned Esther Sutherland, Margaret, wife of James Sutherland, hereinafter mentioned, and Ada, wife of Alexander Sutherland, also hereinafter mentioned.

"B.—Should my personal estate not realize sufficient to pay the obligations mentioned in ITEMS 2, 3, 4 and 5 of this will then I direct that so much as may be necessary for their liquidation shall be first paid out of the proceeds of the sale of my real estate and that the balance be divided into three equal parts. One part thereof I give to Archibald Archibald of Scotland, half brother of my late husband, Donald Mains, and one part each to James Sutherland and Alexander Sutherland, of Philadelphia, Pa., nephews of my said late husband, Donald Mains.

　　　＊　　　＊　　　＊　　　＊　　　＊　　　＊　　　＊　　　＊

"ITEM 8. All the rest, residue and remainder of my estate, I give to the before mentioned James and Alexander Sutherland, equally, share and share alike."

The petitioner is Archibald Archibald, now living in Scotland, who claims one-third of the proceeds of the real estate of the deceased under item 6, paragraph B of the will.

The executors qualified before the surrogate of the county of Passaic, on October 18th, 1912, and filed an inventory of the estate.

On September 21st, 1912, the testatrix made a valid contract of sale for some of her holdings in real estate, which consisted of a hotel property, three acres of land, the buildings thereon, the furniture therein and the stock of wines, liquors, &c., on the premises, with John E. Dunning, for the sum of $10,000, and in pursuance of this contract the executors executed a deed for the hotel property to the vendee, at his request and on his demand. All the legacies provided for by the will have been paid,

and the executors filed their final account, which was confirmed by the orphans court, which showed a balance of $7,415.67.

The executors sold the real estate of which the testatrix died seized (outside of the hotel property already mentioned) for the sum of $1,297.78.

The orphans court held that paragraph B of item 6 of the will is inoperative.

I am unable to agree with the learned judge in regard to that particular finding. I think the testatrix, undoubtedly, intended by her will to leave all the proceeds of her real estate to the three devisees whom she mentions in subsection B of item 6. In the first place, it is highly improbable that anyone would devise real estate only, and in the event that it was found necessary to draw on such real estate for the payment of cash legacies by reason of a shortage of the personal property. According to the contention of the executors, and the finding of the court, before this clause could be operative it must have been proved that the personal property was not sufficient to pay off the general legacies, debts, &c., and that it was necessary to draw on the real estate to the extent of at least one cent. After reading the whole of this will many times, I am perfectly satisfied that such was not the intention of the testatrix. According to my reading of the will, she intended all her personal property that remained after the payment of her debts, funeral and testamentary expenses, and the cash legacies, if any, to be divided equally between the three Sutherland women; and she intended all of her real estate to go to the three devisees she mentions in subsection B of item 6.

By item 8 she merely intended that if any of the legacies lapsed that contingency would be provided for. The fact that she says, in subsection A of item 6, that "the remainder, if any, to be divided equally, share and share alike," between the three Sutherland women, would seem to indicate that she had some doubt whether there would be anything to divide between them; one may conjecture that she did not intend that the bulk of her whole estate was to be divided between them; however, courts cannot leave the construction of wills to conjecture; that is governed by well-defined principles and acknowledged rules of

19

interpretation. The testatrix must be presumed to know the law, and when, after making her will, she entered into a valid contract for the sale of a portion of her lands, she must be presumed to have intended that the proceeds of the sale were to go to those to whom she had left the balance of her personal property, and not to those to whom she had left her real property. Of course, if she had stated in her will that the proceeds of the sale of any of her real estate that might be made after the date of her will should, nevertheless, go to her devisees, that would be a different matter, but she has not done so; and, under this contract of sale of the hotel property heretofore mentioned, there was a clear case of equitable conversion, and I am bound by this rule; although, personally, I am somewhat inclined to believe that she never had such an idea in her head.

Under item 9 the testatrix appointed executors of her will with full power to make and execute all deeds of conveyance; and, under item 6, she gave imperative directions to them to sell and dispose of all her real and personal property, which they have done. The only question undisposed of is, what proportion of the estate is to be divided between the three devisees—Archibald Archibald, James Sutherland and Alexander Sutherland? It will be remembered that the testatrix had the legal title to other lands besides the land which she contracted to sell (excepting therefrom the burial plot in Laurel Grove Cemetery, mentioned in item 6, and the property mentioned in item 1). The proceeds of the sale by the executors of this land will be divided equally between the three devisees mentioned in subsection B of item 6, namely, Archibald Archibald, James Sutherland and Alexander Sutherland.

Decree will be advised in accordance with these views.